UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER L. SCRUGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00459-JPH-MJD |
| | ) | |
| JACKIE WEST-DENNING, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

**Order Denying Mr. Scruggs's Motion for Summary Judgment,
Granting Defendant's Motion for Summary Judgment,
and Directing Entry of Final Judgment**

Christopher L. Scruggs brings Eighth Amendment claims against Dr. Jackie West-Denning for unnecessary infliction of pain and deliberate indifference to his serious medical needs.  Before the Court are the parties' cross-motions for summary judgment. For the reasons explained in this Order, Mr. Scruggs' motion is denied, and Dr. West-Denning's motion is granted.

## I.  Summary Judgment Legal Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable

1

to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017). The non-moving party bears the burden of specifically identifying the relevant evidence of record. *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015). This is in part because summary judgment is the "put up or shut up" moment in a lawsuit. *Grant*, 870 F.3d at 568.

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II. Facts of the Case

Consistent with the legal standards set out above, the following facts are undisputed. *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014). That is, these statements of fact are not necessarily objectively true, but as the summary judgment standard requires, the undisputed

facts and any disputed evidence are presented in the light most favorable to the non-moving party. *Whitaker v. Wisc. Dep't of Health Serv's,* 849 F.3d 681, 683 (7th Cir. 2017).[1]

Dr. West-Denning is a physician who was licensed to practice medicine in Indiana at all times relevant to this action. She was employed by Wexford of Indiana, LLC, a company under contract to provide medical services in Indiana prisons, at the Wabash Valley Correctional Facility (WVCF). She worked at WVCF for only a ten-month period, from October 23, 2017 to July 26, 2018. Dkt. 110-1 (affidavit of Dr. West-Denning) at ¶¶ 1-2.

Dr. West-Denning saw Mr. Scruggs a single time, on January 9, 2018. *Id.* at ¶ 10. It was Dr. West-Denning's understanding that she was supposed to be Mr. Scruggs' doctor while she was at the WVCF. *Id.*  But because of Mr. Scruggs' threats against her (discussed below), she could not continue to be his doctor.  *Id.* at ¶ 6.

Because Mr. Scruggs was to be Dr. West-Denning's patient, she reviewed his medical records before meeting him. On January 8, 2018, just one day before she met Mr. Scruggs, Dr. West-Denning issued a Formulary Exception Request ("FER") for 300 mg Neurontin twice daily to manage Mr. Scruggs' pain. *Id.* at ¶ 7; dkt. 110-2; dkt. 120-1 at p. 17. Dr. West-Denning states her intent was to extend Mr. Scruggs' Neurontin long enough to allow her an opportunity to personally assess and evaluate Mr. Scruggs. Dkt. 110-1 at ¶ 7. On the same date, Dr. West-Denning ordered an x-ray of Mr. Scruggs's lower back. *Id.* at ¶ 8; dkt. 110-3. Mr. Scruggs disputes Dr. West-Denning's testimony concerning her intent and points to the non-

---

[1] Mr. Scruggs disputes many of these facts. *See* dkt. 120. Where a fact asserted by Dr. West-Denning is supported by admissible evidence and Mr. Scruggs does not designate evidence contesting the fact but only asserts his belief, opinion, or interpretation, the Court accepts the fact as true for summary judgment purposes. *See* S.D. Ind. L.R. 56-1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."). If Mr. Scruggs' belief or interpretation is a *reasonable* inference, it will be construed in his favor and framed in that manner. *Whitaker*, 849 F.3d at 683.

formulary request form for the Neurontin that reflects an order for ninety days and one refill. Dkt. 120 at p. 2.

In January 2018, Mr. Scruggs was on a hunger strike. Dkt. 110-11 (Scruggs deposition) at pp. 14-16. He refused to eat soy, meat, and gluten, but ate apples and corn flakes and drank water. *Id.* at pp. 24-25. On January 9, 2018, Mr. Scruggs complained to custody and nursing staff that he was having chest pain. Dkt. 110-1 at ¶ 9. He was taken to the medical unit, where his reported symptoms were recorded as fatigue, vision changes, dyspnea, dyspnea on exertion, orthopnea and paroxysmal nocturnal dyspnea, chest pain, claudication, edema, irregular heartbeat/palpitations and syncope, diaphoresis, lightheadedness, confusion, dizziness, and headache. Dkt. 110-5 at p. 2.

Dr. West-Denning met Mr. Scruggs during this event. This was their only face-to-face meeting. *Id.* at ¶ 10; dkt. 110-5 (medical record from January 9, 2018). The details of the visit were recorded and entered into the medical computer system at 5:21 p.m. *Id.*

Dr. West-Denning's medical record of this meeting reports that Mr. Scruggs was "argumentative, wanted to discuss his diet, mattress" and "appeared to be in no distress." Dkt. 110-5 at p. 3; dkt. 110-1 at ¶ 11. Mr. Scruggs disputes this description of his demeanor, contending that the order of the events is wrong and denying that he talked about his mattress. Dkt. 120 at p. 2. Dr. West-Denning testified that she conducted a full review of systems (ROS) of Mr. Scruggs. Dkt. 110-1 at ¶ 11; dkt. 110-5 at pp. 1-4. Dr. West-Denning observed that Mr. Scruggs' neurological function appeared normal, he had no heart murmurs, his breathing was normal, he had good skin turgor, he had moist mucous membranes, his gait was intact, and he did not show signs of diaphoresis. *Id.* Mr. Scruggs's good skin turgor and moist mucous membranes indicated that he was not dehydrated. (Ex. A, at ¶¶ 12-13.) Mr. Scruggs contends that Dr. West-Denning never examined him and cites to the complaint in this action and his deposition testimony

in support of that contention. Dkt. 120 at p. 3, citing to Exhibit I (his deposition) and Exhibit M (the complaint).

Diaphoresis is abnormal sweating which is often associated with a heart attack or hypoglycemia. Dkt. 110-1 at ¶ 14. Dr. West-Denning examined Mr. Scruggs for diaphoresis due to his complaints of chest pain and his statements that he was on a hunger strike. Mr. Scruggs did not display signs of diaphoresis, which is one metric Dr. West-Denning used in her physical examination to rule out both a heart attack and low blood sugar as the cause of his symptoms. *Id.*

Dr. West-Denning asked Mr. Scruggs if he was experiencing any lightheadedness, to which he indicated he was, but attributed it to his not eating. Dkt. 110-1 at ¶ 18; dkt. 110-11 at p. 26. Dr. West-Denning recorded that Mr. Scruggs was negative for dizziness, but that he was positive for lightheadedness. Dkt. 110-1 at ¶ 18. Lightheadedness can occur with a heart attack or with dehydration. *Id.* Mr. Scruggs denied being nauseous, vomiting, or having diarrhea. Based on the limited information provided by Mr. Scruggs, Dr. West-Denning felt as though his symptoms more closely resembled lightheadedness. *Id.*

Dr. West-Denning ordered an electrocardiogram (EKG). *Id.* at ¶ 15; dkt. 110-6; dkt. 110-11 at pp. 26-27. Dr. West-Denning asserts that Mr. Scruggs also had an EKG on December 29, 2017. Dkt. 110-1 at ¶ 16; dkt. 110-7. She noted the January 9, 2018 EKG results were largely unchanged from the December EKG and that both EKGs were generally within the normal range. Dkt. 110-1 at ¶ 16; dkts. 110-6 & 110-7. However, Mr. Scruggs contends that he did not have an EKG in December 2017 and that Dr. West-Denning fabricated this evidence. Dkt. 120 at p. 3, ¶ 5.[2]

---

[2] Mr. Scruggs responded to Dr. West-Denning's cross-motion for summary judgment with a 16-page brief and 1,255 pages of exhibits. Dkt. 120. He contends that he received his medical records in a different case he is pursuing in this district, *Scruggs v. Sims*, No. 2:18-cv-00460-JRS-MJD, and that the December 29, 2017, EKG report is not among those records. He attached those medical records to the instant response, as exhibit N, which appears to be 514 pages. Mr. Scruggs

Dr. West-Denning told Mr. Scruggs that nothing was wrong with his heart, but Mr. Scruggs disagreed, said there was something wrong with his heart, and said the EKG was inaccurate. Dkt. 110-1 at ¶ 17; dkt. 110-11 at p. 26; dkt. 120 at p. 4, ¶ 6.

To rule out any side effects caused by Mr. Scruggs's hunger strike Dr. West-Denning took Mr. Scruggs's orthostatic vitals. *Id.* at ¶ 19. Orthostasis is the normal physiological response of the sympathetic nervous system to counteract a fall in blood pressure when is person is laying down and assumes an upright position. *Id.* This meant taking Mr. Scruggs' blood pressure and pulse while he was sitting and again while lying down. *Id.* at ¶ 20. Mr. Scruggs's orthostatic vital signs were within normal ranges, indicating that he was not at risk for fainting. *Id.* at ¶¶ 20-23.

At the time of the January 9, 2018, chest pain event, Mr. Scruggs' medications were a low-dose aspirin regimen, Lactulose, Lisinopril, Neurontin, Pepcid, and Terazosin. *Id.* at ¶ 24. Of these medications, a few could have caused Mr. Scruggs' lightheadedness. *Id.*, at ¶ 24b–f. Given Mr. Scruggs's active medications, Dr. West-Denning believed the most likely culprit of the lightheadedness was Neurontin. *Id.* at ¶ 25. While Lisinopril, Pepcid, and Terazosin can occasionally produce lightheadedness or dizziness, these are far more common side effects for Neurontin. *Id.*

Dr. West-Denning ordered a reduction (tapering) in Mr. Scruggs' Neurontin. In making this decision, Dr. West-Denning noted that Mr. Scruggs' medical records contained a July 17, 2017, radiology report of x-rays taken following Mr. Scruggs' report of pain in his sacrum and coccyx. The report found that the "sacrum and coccyx appear within normal limits." *Id.* at ¶ 26; dkt. 110-8). Dr. West-Denning also saw in the medical records that Mr. Scruggs had refused

---

concludes that because the medical records he received from opposing counsel in his other case do not include the December 2017 EKG, Dr. West-Denning must have fabricated the report. The resolution of this action does not turn on whether the December EKG report is authentic.

numerous blood draws, raising a concern that the Neurontin is being diverted and trafficked. Dkt. 110-1 at ¶ 27. Finally, Dr. West-Denning reviewed Mr. Scruggs' medical records from Eskenazi Hospital where Mr. Scruggs had been seen and assessed for complaints of pain in the past. *Id.* at ¶ 28. During his most recent examination at Eskenazi (date not noted), medical staff there apparently thought that Mr. Scruggs displayed signs of malingering. *Id.*

After Dr. West-Denning interpreted the EKG results, recorded her interaction with Mr. Scruggs in his electronic medical records, and issued a FER to taper Mr. Scruggs' Neurontin, *see* dkt. 110-10, she left WVCF for the day. Dkt. 110-1 at ¶ 30. The FER changed Mr. Scruggs' Neurontin from 300 mg twice daily to 100 mg twice daily. Dkt. 110-10.

Mr. Scruggs was taken from the medical area and got into a van for transport back to his housing unit. In the van he "vented" his anger at Dr. West-Denning and made threatening comments directed at her. The correctional staff issued him a conduct report for threatening. Dkt. 110-11 at p. 27. Mr. Scruggs testified that pursuant to policy, Dr. West-Denning was informed of his threats. *Id.* He contends "that's when she took me off my pain medication." *Id.*

Dr. West-Denning states in her affidavit that she was not aware of the conduct report of Mr. Scruggs' threats when she issued the order to taper Mr. Scruggs's order for Neurontin. *Id.* at ¶¶ 30-31. Mr. Scruggs stated in his deposition that he was given the conduct report at 5:00 p.m. Dkt. 110-11 at p. 27. He believes he was "taken off [his] medicine" at 5:21 p.m. *Id.*; dkt. 110-10 at p. 1.

### III. Discussion

Mr. Scruggs' § 1983 claims against Dr. West-Denning arise, because he is a convicted offender, under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is

confined are subject to scrutiny under the Eighth Amendment."). The claims are (1) unnecessary infliction of pain, *see Whitley v. Albers*, 475 U.S. 312, 319 (1986) (discussing deliberate infliction of pain claims), and (2) deliberate indifference to a serious medical need, *see Farmer v. Brennan*, 511 U.S. 825, 8374 (1994) (defining deliberate indifference to serious medical needs claims). The claims are based on Mr. Scruggs' belief that when Dr. West-Denning learned of his threat "to follow her home and kill her", *see* dkt. 2 (complaint) and dkt. 10 (screening order), she stopped his pain medication.

Prison officials have a duty to provide humane conditions of confinement, which includes *adequate* medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To prevail on a deliberate indifference to serious medical needs claim, Mr. Scruggs must show that (1) he suffered from an objectively serious medical condition, and (2) the defendant knew about the condition and the substantial risk of harm it posed but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 775 (7th Cir. 2014); *see also Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (*en banc*) ("To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition."). To elaborate further:

> To prove deliberate indifference, mere negligence is not enough. A plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm. The linchpin is a lack of professional judgment. A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances. A prison medical professional faces liability only if his course of treatment is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

8

*Campbell v. Kallas*, 936 F.3d 536, 544-45 (7th Cir. 2019) (internal citations and quotations omitted). To elaborate even more, deliberate indifference means a culpable state of mind equivalent to criminal recklessness. *Rivera v. Gupta*, 836 F.3d 839, 842 (7th Cir. 2016).

Concerning Mr. Scruggs' infliction of pain claim, "[t]he Eighth Amendment prohibits the unnecessary and wanton infliction of pain, which includes [d]eliberate indifference to serious medical needs of prisoners." *Knight v. Grossman*, 942 F.3d 336, 340 (7th Cir. 2019) (internal quotation omitted).

Mr. Scruggs claims that Dr. West-Denning was deliberately indifferent to his serious medical needs (his back pain), and intentionally caused him pain by withdrawing his pain medication. He argues that this inference is supported by the fact that Dr. West-Denning wrote the order modifying his pain medication after he made the threats against her. Dkt. 2. But this is speculative and not reasonably inferred from the facts, while Dr. West-Denning's stated reason for her action is supported by the medical record and other evidence.

In her affidavit, Dr. West-Denning states that when she wrote the January 9, 2018, order modifying Mr. Scruggs' pain medication she was not aware that he had made threats against her. Dkt. 110-1 at ¶ 31. Mr. Scruggs argues that Dr. West-Denning had to have been told about his threats because that was prison policy and that she thus knew of the threat and acted with the intent to inflict pain. This is not a reasonable inference that can be construed in Mr. Scruggs' favor. The Court will not draw inferences that are "supported by only speculation or conjecture," *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)) (internal citations omitted). "Conclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

In his attempt to provide evidence to support his theory of the case, Mr. Scruggs points to places in the medical record which he contends suggest Dr. West-Denning's nefarious intent and sinister actions. He contends that Dr. West-Denning fabricated an EKG record to support her conduct. *See* n.2 *supra.*  Mr. Scruggs asserted that false x-rays were taken of his back to reflect that nothing was wrong with his lower back, but has no evidence to support the assertion, and extrapolates from there that Dr. West-Denning used the false x-rays to support her removal of his pain medication. Mr. Scruggs believes that Dr. West-Denning's statements that she examined him on January 9, 2018, are false, contending that she never examined him. Dkt. 120.

Mr. Scruggs repeatedly contends that Dr. West-Denning removed or stopped his pain medication. Dkts. 2, 110-11, & 120. But the undisputed record does not show that Dr. West-Denning *stopped* the medication, only that she *reduced* the dosage. Dkt. 110-10 at p. 1.  Dr. West-Denning's recommendation to resume the 300 mg dose of Neurontin was entered into the medical record at 11:02 p.m. Dkt. 110-2. Less than eighteen hours later, after seeing Mr. Scruggs for the first time and evaluating his complaints of chest pain, Dr. West-Denning reduced the Neurontin dose to 100 mg twice daily. She had been able to assess Mr. Scruggs' demeanor and symptoms, leading her to suspect him of malingering. Dkt. 110-10. Noting his reported symptoms, and knowing that she had recommended a resumption of 300 mg of Neurontin just the night before, Dr. West-Denning's decision to "taper" Mr. Scruggs' dosage of Neurontin was an action taken in response to his symptoms, his medical history, and an in-person evaluation of the patient. It was a medical decision and not an act of retribution. The objective record supports this finding and no reasonable jury would find otherwise.

As noted earlier, to give credence to Mr. Scruggs' theory that Dr. West-Denning's decision was an act of retribution intended to inflict unnecessary pain would be speculative. The *only*

evidence to support Mr. Scruggs' theory is the timing. But coincidental timing is insufficient to defeat a motion for summary judgment because "[b]y itself, temporal proximity would not normally create an issue of material fact as to causation." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004). The same would be true about coincidental timing not being sufficient to create a material issue of fact as to intent. Speculative theories of a case cannot defeat an evidence-based motion for summary judgment. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The Court has considered Mr. Scruggs' motion for summary judgment while also considering Dr. West-Denning's cross-motion. Although Mr. Scruggs' motion was filed before discovery ended on July 10, 2019, *see* dkt. 17 & dkt. 87, Dr. West-Denning's cross-motion and Mr. Scruggs' response make the same arguments and cite essentially the same evidence and Mr. Scruggs' deposotion. The Court has therefore assessed both motions, the submitted evidence, and the responsive filings *in toto* for judicial expediency. Separate consideration of each motion would not provide a different result.

### IV. Conclusion

Dr. Jackie L. West-Denning's affidavit explaining her reason for reducing, not stopping, Christopher Scruggs' pain medication, supported by the medical record, requires that Mr. Scruggs' motion for summary judgment, dkt. [87], be **denied**, and Dr. West-Denning's motion for summary judgement, dkt. [108], be **granted**. This action is **dismissed** with prejudice. Final judgment consistent with this Order shall now enter.

**SO ORDERED**.

Date: 8/28/2020

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

11

Distribution:

Christopher L. Scruggs
957096
Wabash Valley Correctional Facility – Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
Katz Korin Cunningham, P.C.
dbitner@kkclegal.com

Jarod Zimmerman
Katz Korin Cunningham, P.C.
jzimmerman@kkclegal.com